**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Joy L. Thomas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 2:09-497-PMD |
| v. | ) | |
| | ) | |
| Michael J. Astrue, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Joy L. Thomas ("Claimant") brought this action, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), to obtain judicial review of a final decision of the Social Security Commissioner denying her claims for disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423, 1381a. The record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), recommending the court to reverse and remand the case to the Commissioner for an award of benefits to the Claimant.

## BACKGROUND

Claimant applied for supplemental security income on May 31, 2005 and disability insurance benefits on June 15, 2005, alleging that she became unable to work on May 31, 2005, due to multiple symptoms including chronic pain from a twisting injury to the right lower extremity and reflex sympathetic dystrophy of the right lower extremity. Claimant, 29 years old at the time she allegedly became disabled and 33 years old at the time of the Administrative Law Judge's ("ALJ") decision, has a ninth-grade education. Her past relevant work experience includes work as a cook, sandwich maker, forklift operator, hand packer, food assembler, tack welder, and card lacer. The Social Security Administration denied Claimant's applications upon initial review and upon

reconsideration. Subsequently, Claimant requested a hearing before the ALJ on April 11, 2006, and after conducting a hearing and a supplemental hearing, the ALJ found that Claimant was not disabled because, despite her residual functional capacity, jobs existed in the state and national economy that she could perform. The Commissioner adopted the following findings of the ALJ when making the determination that claimant was not entitled to benefits:

> 1. The claimant met the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since May 31, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et. seq.*).
>
> 3. The claimant has the following severe impairments: chronic pain from a twisting injury to the right lower extremity and reflex sympathetic dystrophy (RSD) of the right lower extremity (20 CFR 404.1520© and 416.920©).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she may sit for four out of eight hours, stand for two out of eight hours; may walk up to fifteen feet from her work site and must use an assistive device if she walks beyond that distance; and never climb, balance, stoop, crouch, kneel, or crawl. She is able to carry small objects with her hands; occasionally reach; frequently handle, finger, and feel; but not push or pull. Balance and pain issues preclude her from work around heights, dangerous moving machinery, and extremes of humidity. She may occasionally be exposed to extremes of temperature and dust, fumes, and chemicals.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on June 11, 1975, and was 29 years old on the alleged disability onset date, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963). She is now 33 years old.

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560©, 404.1566, 416.960©, and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 16–24.) Claimant has now filed suit in this court, seeking a review of the Commissioner's final determination. After conducting his review of the record, the Magistrate Judge recommends that this court reverse the Commissioner's decision and remand the case to the Commissioner to take appropriate action regarding the award of benefits to Claimant. Specifically, the Magistrate Judge found that the ALJ did not have substantial evidence to support the finding that Claimant could perform the certain jobs listed by the vocational expert because those jobs would require Claimant to exceed her physical capacity as found by the ALJ. (R&R at 6.) The Commissioner's objections are now before the court.

# STANDARD OF REVIEW

## A. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

## B. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although the court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)).

## **ANALYSIS**

At the administrative hearing, the ALJ provided the vocational expert with the following hypothetical and asked him if there were any jobs that would exist in the state or national economy that the individual could perform:

> [Assume Plaintiff] is 32 years of age. She has a ninth grade education. She has performed the past work as outlined in your testimony. Objectively she has musculoskeletal impairments, in which she has chronic pain from a twisting injury resulting in reflex dystrophy of her right lower extremity. She has testified [to] pain, primarily in the right lower extremity, including the foot and the leg, and a limited ability to sit, stand and walk. I'd ask you to assume for the purpose of this hypothetical that the Claimant's age, education and work background, objective impairments and subjective complaints in combination would reduce her residual functional capacity. It would allow the exertional or non-exertional ability as follows: She could lift 20 pounds occasionally and ten pounds frequently. She could sit four hours out of eight hours. She could stand and walk, she could stand two hours out of eight hours and walk two hours out of eight hours. However, walking should not exceed 15 feet and from the worksite. If she goes beyond 15 feet she'd require an assistive device. She could carry small objects. She should not engage in climbing, balancing, stooping, kneeling, crouching or crawling. She could occasionally reach overhead and she could occasionally reach. She could frequently handle, finger and feel. She should not push and pull. Her balance and pain issues would preclude working around heights and dangerous moving machinery; extremes of temperature and humidity and excessive dust, fumes and chemicals. Well, actually the dust, fumes and chemicals would be occasional. And the extreme heat would be occasional. So by summary she could avoid, she should avoid heights and dangerous moving machinery and extremes of temperature, extremes of humidity; but she could occasionally be exposed to extremes of temperature and occasionally be exposed to excessive dust, fumes and chemicals. Her mental, she's had some minor mental problems, however, she has no significant mental impairment.

5

(R. 327–28.) In response to this hypothetical, the vocational expert identified three unskilled, light-work jobs Claimant could perform: office helper, mail clerk, and a surgical instruments inspector. The vocational expert also acknowledged that his testimony was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"), but only as it relates to a sit/stand option in work activity. Despite the conflict, the vocational expert explained that he has personally observed the jobs he cited being performed on a sit/stand option basis, and he further explained that he reduced the total number of such jobs existing in the economy to more accurately reflect the number of available jobs performed in that manner. Based on this testimony, as well as Claimant's age, education, work experience, and residual functional capacity, the ALJ found that Claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore, he determined she was not disabled.

The Magistrate Judge, after his review of the record, disagrees, and it is the conflicts that exist between the physical demands for these jobs in the DOT with the limits posed to the vocational expert in the hypothetical that led the Magistrate Judge to recommend reversing the Commissioner's decision. (R&R at 8.) First, the Magistrate Judge found that Claimant's residual functional capacity conflicts with the requirements of "light work," which is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). Considering the ALJ's hypothetical only permitted Claimant to sit for four

6

hours in a day and did not permit her to push and pull, the Magistrate Judge found that Claimant's impairments and restrictions are inconsistent with the definition of light work, since when light work involves sitting, "it involves sitting most of the time with some pushing and pulling of arm or leg controls." Also, pursuant to Social Security Ruling 83-14, a person must be "able to do occasional bending of the stooping type, i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist," to be able to perform light work. Again, the Magistrate Judge found the Commissioner erred by finding Claimant could perform light work when he also found that she should not stoop. Based on these inconsistencies, the Magistrate Judge believes Claimant is capable of performing a limited range of sedentary work, but her impairments prevent her from performing light work.

Lastly, the Magistrate Judge noted that according to the DOT and the Selected Characteristics of Occupations, each of the three specific jobs cited by the vocational expert require some physical demands that exceed Claimant's limited capacity as determined by the ALJ. (R&R at 10.) For example, the mail clerk and office helper positions each require frequent reaching, while the ALJ determined that Claimant was only capable of occasional reaching. The office helper position also requires occasional stooping, yet the ALJ determined that Claimant should not stoop at all. Finally, the inspector position requires constant handling and fingering, yet the ALJ determined that Claimant is limited to frequent handling and fingering. Because Social Security Ruling 00-4p requires the vocational expert to identify the conflicts at issue and then offer testimony as to why the cited jobs could be performed by Claimant despite contradictions with the requirements of the DOT, as well as explain the impact that those conflicts would have on the numbers of available jobs, the Magistrate Judge determined that the vocational expert's testimony

did not adequately account for these conflicts, nor did the ALJ resolve them in determining that Claimant was not disabled. Thus, the Magistrate Judge concluded that the testimony on which the ALJ relied failed to establish that there are a significant number of jobs in the national economy that fit Claimant's functional capacity.

In response to the Magistrate Judge's first point, the Commissioner argues that two of the jobs identified by the vocational expert, mail clerk and surgical instruments inspector, do not require stooping. Thus, although light work, by definition, may generally require occasional stooping, these two jobs do not have the same exertional requirements as that general description, and the Commissioner believes Claimant can perform them. In response to the Magistrate Judge's second point, the Commissioner acknowledges the conflicts identified by the Magistrate Judge, but argues that the DOT lists the maximum requirements for a position as it is generally performed as opposed to the range of requirements of a particular job as it is performed in specific settings. Thus, merely because the DOT indicates that the jobs identified by the vocational expert exceed Claimant's residual functional capacity for reaching, stooping, handling, and fingering does not necessarily mean she is incapable of performing those jobs. The Commissioner even suggests that Claimant may be able to satisfy the reaching, handling, or fingering requirements of the jobs, despite her limitations, by alternating between using her left hand and right hand.

After considering the record, the R&R, and the Commissioner's objections, the court finds that the case should be remanded for further proceedings so that the ALJ can determine, based on additional explanation from the vocational expert, whether or not Claimant can perform the cited jobs despite the conflicts present between Claimant's residual functional capacity and the cited jobs' physical demands. Here, the ALJ resolved the conflict between the DOT and Claimant's need for

a sit/stand option by having the vocational expert explain that, through his personal observations of the cited jobs, Claimant would be able to perform them because those jobs accommodate a sit/stand option. The vocational expert, however, never explained, nor did the ALJ resolve, the conflicts that exist between the other physical demands cited by the Magistrate Judge. The Fourth Circuit has noted:

> Social Security Ruling 00-4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the Dictionary of Occupational Titles and vocational expert testimony to determine whether a Social Security claimant can find work suited to his residual functional capacity. Noting that the sources should typically be consistent, Ruling 00-4p nonetheless provides that 'When there is an apparent unresolved conflict between [vocational expert] evidence and the [Dictionary of Occupational Titles], the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.' Specifically, the ALJ 'will inquire, on the record, as to whether or not there is such consistency.'
>
> Ruling 00-4p acknowledges, however, that neither the Dictionary of Occupational Titles nor the vocational expert's testimony 'automatically trumps when there is a conflict'; instead, the ALJ is obligated to resolve the conflict by deciding if the vocational expert's explanation for the conflict is reasonable. The vocational expert's conflicting testimony can be used, for instance, if the ALJ finds that it is based on 'other reliable publications' or the expert's own 'experience in job placement or career counseling.' However resolved, the ALJ 'must resolve this conflict before relying on the [vocational expert] evidence to support a determination or decision that the individual is or is not disabled' and must 'explain in the determination or decision how he or she resolved the conflict.'

*Fisher v. Barnhart*, 181 F.App'x 359, 365 (4th Cir. 2006). Without these required explanations in this case, as well as an explanation as to whether or not the conflicts reduce the number of jobs that would be available to Claimant, the court does not believe it can properly review the Commissioner's decision that there are a significant number of jobs in the economy that actually fall within Claimant's functional capacity, making her not disabled. And while it is true that the DOT lists maximum requirements of occupations as generally performed and not the range of

9

requirements as it is performed in a specific setting, and while the Commissioner suggests a resolution to the conflicts in his objections, the law requires that Claimant's record contain the opinion and explanations of the vocational expert, as well as the judgment of the ALJ, as they pertain to her individual case.

## CONCLUSION

It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for reconsideration in accordance with this Order.[1] 42 U.S.C. §§ 405(g), 1383(c)(3).

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**June 28, 2010**
**Charleston, SC**

---

[1] "Should this remand result in the award of benefits, Claimant's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*" *Stutts v. Astrue*, No. 06-G-1476-NW, 2007 WL 1696878, at *5 (N.D. Ala. June 13, 2007).